FILED
A.M. March 12 2010
DAVID J. MALAND, CLERK
U.S. DISTRICT COURT
By_____
DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | CRIMINAL NO. 1:09-CR-146(4) |
| | § | Judge Thad Heartfield |
| CURTIS TUMBS | § | |

## FACTUAL BASIS AND STIPULATION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, the United States of America, by and through the undersigned Assistant United States Attorney in and for the Eastern District of Texas, joined by **Curtis Tumbs**, defendant, and his counsel of record, Michael Laird, and presents this factual basis and stipulation in support of the defendant's plea of guilty to Count One of the indictment, and, in support thereof, would show the following:

1. That **Curtis Tumbs**, defendant, hereby stipulates and agrees as to the facts recited in paragraphs 5. Defendant stipulates and agrees to the truth of all matters set forth in these paragraphs in this factual basis and stipulation, and agrees that such admission may be used by the Court in support of his plea of guilty to Count One of the indictment, alleging a violation of 21 U.S.C. § 846, conspiracy to distribute and to possess with intent to distribute five (5) kilograms or more of a mixture or substance containing a detectable amount of a Schedule II controlled substance, namely cocaine HCL.

2. That the defendant, **Curtis Tumbs**, who is pleading guilty to such indictment, is

one and the same person charged in the indictment.

3. That the crime alleged in the indictment occurred on or about the dates and places specified in the indictment;

4. That the events described in the indictment occurred in the Eastern District of Texas and elsewhere;

5. That, had this case proceeded to trial, the government would have proven each and every essential element of the offense, beyond a reasonable doubt, through the testimony of witnesses, including expert witnesses, and through exhibits, which would have demonstrated the following:

   a) That on September 9, 2009, Marcus Hernandez (Hernandez) and Juan Carlos Garza (Garza) met with a DEA confidential source (CS) at 404 IH-10, Beaumont, Texas, Eastern District of Texas for the purpose of arranging the distribution of a large quantity of cocaine HCL in New York City. Defendant and his co-defendants were acting under the belief that the CS was a source of supply for large amounts of contraband. In that meeting Hernandez and Garza told the CS (in a recorded conversation) that they (and others) were wanting to purchase multi-kilogram amounts of cocaine HCL for principals in New York City. Garza and Hernandez stated they wanted to purchase fifteen kilograms of cocaine HCL from the CS every two weeks.

   b) On September 17, 2009 Garza, Hernandez and **Curtis Tumbs** (defendant) met with the CS at 110 IH-10, Beaumont, Texas, Eastern District of Texas, to continue (secretly recorded) negotiations for the purchase of a large amount of cocaine HCL. The desire to purchase fifteen kilograms of cocaine HCL every two weeks was reiterated. Tumbs gave the CS a 2006 Lincoln truck, silver in color as collateral for the anticipated purchase of cocaine HCL.

   c) On September 18, 2009, Hernandez, Garza and Stevie Eleby, Jr. (Eleby) met with the CS at 5000 Westheimer, Houston, Texas, in the Southern District of Texas, where the negotiations (again secretly recorded) for large amounts of cocaine HCL every two weeks continued. In that conversation,

Eleby and Hernandez stated that they were working to supply two different buyers of cocaine in New York who wanted to purchase ten and fifteen kilograms of cocaine HCL respectively. Eleby stated that the two buyers had presently enough money to purchase 25 kilograms of cocaine HCL at $31,500.00 per kilogram. Garza advised the CS that, if the CS did not go to New York, he (Garza) would remain in Houston with the CS while Hernandez and Eleby would go to New York to make arrangement for the purchase. Hernandez and Eleby advised the CS they would be going to New York in two days to make those preparations. Hernandez advised the CS that the cocaine purchased from the CS would be sold in New York for $32,000.00 to $33,000.00 per kilogram. Eleby told the CS in that same conversation that the present street price of a kilogram of cocaine HCL in New York was $36,000.00

d) On September 23, 2009, Hernandez and Eleby met with a second cooperating DEA confidential source (CS2) at 7016 Northern Blvd., Queens, New York. At that time there was continued discussion between Eleby, Hernandez and CS2 about the anticipated purchase of cocaine HCL from the CS. In that conversation Eleby identified a reported family member (of Eleby's) who would be purchasing the cocaine HCL. Both Hernandez and Eleby stated they had presently sufficient funds to purchase five kilograms of cocaine HCL and that they would get the additional funds for five more kilograms of cocaine HCL (for a total of ten kilograms).

e) On September 24, 2009, Garza and Hernandez engaged in telephone calls with both CS and CS2. The substance of those calls was that the New York buyer of cocaine that the Garza and Hernandez were servicing were not comfortable with delivering the purchase money to CS2 at a particular location in New York. The deal was therefore delayed.

f) On September 30, 2009, Garza contacted the CS and requested a preliminary purchase of one kilogram of cocaine HCL for a price of $23,500.00.

g) On October 5, 2009, Hernandez spoke with the CS by phone. Hernandez informed the CS that his principals wanted one kilogram of cocaine HCL.

h) On October 8, 2009, Garza, Hernandez and **Curtis Tumbs** (defendant) met the CS at a restaurant located at 404 IH-10, Beaumont, Texas, Eastern District of Texas, to transact the sale of one kilogram of cocaine HCL. Hernandez stated Eleby was standing by in New York to complete the

narcotics transaction they had previously agreed to upon the successful completion of the one kilogram sale. The CS was informed that Hernandez would show the CS the purchase money and then **Curtis Tumbs** would test the purity of the cocaine (supposedly to be supplied by the CS). Hernandez and the CS left the restaurant and went outside to a vehicle in the parking lot where Hernandez displayed bundled United States funds he identified as being $23,000.00. The CS and Hernandez then re-entered the restaurant. When **Curtis Tumbs** left the restaurant with the CS to check the purity of the cocaine HCL he was arrested. Hernandez and Garza were arrested at the same time inside the restaurant by other law enforcement officers.

6. I have read this factual basis and stipulation and the indictment or have had them read to me and have discussed them with my attorney. I fully understand the contents of this factual basis and stipulation and agree without reservation that the United States can prove each of these acts and that it accurately describes the events about my acts and the events as recited as I know them.

3/09/10
Dated

Curtis Tumbs
Defendant

### DEFENSE COUNSEL'S SIGNATURE AND ACKNOWLEDGMENT

7. I have read this factual basis and stipulation and the indictment and have reviewed them with my client, **Curtis Tumbs**. Based upon my discussions with the defendant, I am satisfied that the defendant understands the factual basis and stipulation as well as the indictment, and is knowingly and voluntarily agreeing to these stipulated facts.

3-9-10
Dated:

Michael Laird
Attorney for the Defendant

Respectfully submitted,

JOHN M. BALES
UNITED STATES ATTORNEY

_____
John A. Craft
ASSISTANT UNITED STATES ATTORNEY